UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL SALPATORIA,<br><br>Plaintiff,<br><br>vs.<br><br>CHAD WINKEL, OFFICER S.F.P.D.; INDIVIDUAL CAPACITY; JOEY LARSON, OFFICER S.F.P.D.; INDIVIDUAL CAPACITY; AND CATHERINE ANN WOODS, HOTEL MANAGER; INDIVIDUAL CAPACITY;<br><br>Defendants. | 4:17-CV-04172-LLP<br><br><br>ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DIRECTING SERVICE |

Plaintiff, Samuel Salpatoria, is an inmate at the Mike Durfee State Prison in Springfield, South Dakota. On December 21, 2017, Salpatoria filed a pro se civil rights complaint (Docket 1). Salpatoria now moves for leave to proceed in forma pauperis (Docket 2) and filed a prisoner trust account statement in support of his motion (Docket 5). This Court has screened Salpatoria's complaint pursuant to 28 U.S.C. § 1915A. For the following reasons, the Court dismisses Salpatoria's complaint in part and directs service in part.

**FACTUAL BACKGROUND[1]**

On March 11, 2016, Salpatoria rented a room at the Rushmore Motel at 2500 East 10th Street, Sioux Falls, SD. Docket 1 at 15. When returning to his room later that evening, hotel

---

[1] The Court makes no finding of fact at this point in the case. The matters set forth in this section are taken from the factual allegations pleaded in Salpatoria's complaint, which this Court must take as true on initial screening. *Beck v. LaFleur*, 257 F.3d 764, 765 (8th Cir. 2001) (citation omitted).

manager Catherine Ann Woods asked Salpatoria to remove his property and leave the room. *Id.* at 16. When Salpatoria asked for why he needed to leave, he alleges that Woods told him that she did not want him at the motel. *Id.* She threatened to call the police if Salpatoria did not leave. *Id.* Salpatoria went into the room and closed the door. *Id.*

Shortly after, Officer Chap Winkle arrived at the hotel and spoke with Woods. *Id.* Winkle and Officer Joseph Larson then entered the room and told Salpatoria to leave. *Id.* Salpatoria explained that he did not want to because it was dark, cold, and snowy outside. *Id.* Winkle and Larson then pushed Salpatoria hard against the wall, swore at him, and punched him. *Id.* at 17. Winkle and Larson then pushed Salpatoria to the ground and remained on top of him. *Id.* One officer put his knee next to Salpatoria's head and kept punching him. Salpatoria was then tased twice. *Id.*

Officer Mathis arrived and got Salpatoria off the ground. *Id.* The officers then proceeded to construct a story that Salpatoria chocked and punched officers. *Id.* Salpatoria told Mathis that the other officers were lying and he did not choke or punch officers. *Id.*

Salpatoria sustained several injuries during the incident with police. *Id.* at 5. Salpatoria's injuries included damage to both of his eyes, ringing in his right ear, and chest bruises. *See* Dockets 1-1, 1-2, 1-3.

**LEGAL STANDARD**

The court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain

specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008); *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

## DISCUSSION

### I.      Motion to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, " '[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan.' " *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A)    the average monthly deposits to the prisoner's account; or

(B)    the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Salpatoria has reported average monthly deposits to his prisoner trust account of zero dollars and an average monthly balance of *negative* $60.56. (Docket 5). Based on this information, the Court grants Salpatoria leave to proceed in forma pauperis, and the initial partial filing fee is waived.

In order to pay his filing fee, Salpatoria must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure.

The clerk of the court will send a copy of this order to the appropriate financial official at Salpatoria's institution. Salpatoria will remain responsible for the entire filing fee, as long as he is a prisoner, even if the case is dismissed at some later time. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    Screening Under § 1915A

### A.  Claims Against Catherine Ann Woods

Salpatoria alleges that Woods wrongly gave officers authority to enter his hotel room and arrest him. Docket 1 at 4. Salpatoria states that Woods manages the Rushmore Hotel in

4

Sioux Falls, South Dakota. Salpatoria's claim is not cognizable under 28 U.S.C. § 1983, because the defendant did not act under color of state law in managing the hotel. "[T]o state a claim for relief under 28 U.S.C. § 1983, a plaintiff must allege sufficient facts to show '(1) that defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right.' " *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (quoting *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)). A manager of a hotel is not a state actor and does not act under state law. Salpatoria has failed to state a claim against Woods upon which relief may be granted and it is dismissed pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)..

### B. Claims Against Chad Winkel and Joey Larson

#### 1. Illegal Arrest

Salpatoria claims his 2016 arrest was illegal, because he did not commit a crime. Docket 1 at 5. He claims the police created a "negative theory" about him to justify his arrest. *Id.* at 17. Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a state prisoner cannot use a § 1983 action to challenge his confinement. "When 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence' . . . § 1983 is not an available remedy." *Skinner v. Switzer*, 562 U.S. 521, 533 (2011) (quoting *Heck*, 512 U.S. at 487). Accordingly, this claim is barred by *Heck*. Additionally, Salpatoria's claim is mainly conclusory. Because this claim is barred by *Heck*, it is dismissed pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

#### 2. Illegal Search

Salpatoria claims Winkel and Larson illegally searched his hotel room. Docket 6. Salpatoria argues that Catherine Woods could not give officers permission to enter Salpatoria's room. *Id.* at 2. This is again a situation where a judgment in favor of Salpatoria would

necessarily imply the invalidity of his state conviction. *See Heck,* 512 U.S. 487. Accordingly, this claim is barred by *Heck.* Because this claim is barred by *Heck,* it is dismissed pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Excessive Force

Salpatoria claims Winkle and Larson violated his constitutional rights by using excessive force against him. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor,* 490 U.S. 386, 394 (1989). The Eighth Circuit Court of Appeals has recognized different scenarios in which an excessive force claim may arise, differentiating by looking at when in the criminal process the force was used. Where the excessive force claim arises during the arrest, it invokes the protections of the Fourth Amendment. *McKenney v. Harrison,* 635 F.3d 354, 359 (8th Cir. 2011). Therefore, the court analyzes Salpatoria's excessive force claim using the Fourth Amendment framework.

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley,* 574 F.3d 491, 496 (8th Cir. 2009). Whether a use of force was objectively reasonable is determined "by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *McKenney,* 635 F.3d at 359 (internal quotations omitted). "The reasonableness of a use of force depends on the particular facts and circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Carpenter v. Gage,* 686 F.3d 644, 649 (8th Cir. 2012).

6

"A court may also evaluate the extent of the suspect's injuries as well as standard police procedures." *Mann v. Yarnell*, 497 F.3d 822, 826 (8th Cir. 2007) (internal citation omitted).

Salpatoria's complaint implies that he did not pose a threat to police officers. Salpatoria claims he tried to explain that the winter weather conditions prevented him from leaving the hotel when officers asked him to leave. Docket 1 at 3. Despite attempts to explain, beat and tased Salpatoria. Finally, Salpatoria alleges substantial injuries: ringing in his ear, bruising, damage to both eyes, and chest pain. Salpatoria states a claim of excessive force under the Fourth Amendment.

### III. Motion to Appoint Counsel

Salpatoria includes in his complaint a request for court appointed counsel. Docket 1. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant's civil case, the district court considers the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting testimony, and the indigent's ability to present his claim. *Id.* In this case, the facts of Salpatoria's claims are not complex, and he appears able to adequately present his § 1983 claims. Therefore, his motion (Docket 1) is denied.

### IV. Motion for Rehearing

On April 12, 2018, Salpatoria filed a letter to the Clerk of Court. Docket 10. The Clerk of Court filed the letter and construed it as a Motion for Rehearing. *Id.* Based upon Salpatoria's subsequent filings, the Court has inferred that Salpatoria seeks rehearing from the South Dakota Supreme Court, not this court. *See* Docket 13. This Court of course cannot order the South

Dakota Supreme Court to rehear Salpatoria's case. In the case that Salpatoria seeks rehearing from this Court, that motion is denied.

Accordingly, it is ORDERED

1. Salpatoria's motion for leave to proceed in forma pauperis (Docket 2) is granted

2. After payment of the initial partial filing fee, Salpatoria's institution will collect the additional monthly payments in the manner set forth in 28 U.S.C. § 1915(b)(2), quoted above, and will forward those installments to the court until the $350 filing fee is paid in full.

3. The Clerk of the Court is directed to send a copy of this order to the appropriate official at Salpatoria's institution.

4. Salpatoria fails to state a claim upon which relief may be granted against Catherine Ann Woods and she is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. Salpatoria fails to state an illegal arrest or illegal search claim against Chad Winkel or Joey Larson and the claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. Salpatoria's excessive force claim against Chad Winkel and Joey Larson survives screening under 28 U.S.C. § 1915A.

7. The Clerk shall send blank summons forms to Salpatoria so he may cause the summons and complaint to be served upon the remaining defendants.

8. Salpatoria shall complete and send the Clerk of Courts a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summonses. If the completed

summonses and USM-285 forms are not submitted as directed, the complaint may be dismissed.

9. The United States Marshal shall serve a copy of the complaint (Docket 1), Summons, and this Order upon defendants as directed by Salpatoria. All costs of service shall be advanced by the United States.

10. Defendants will serve and file an answer or responsive pleading to the remaining claims in the complaint on or before 21 days following the date of service or 60 days if the Defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

11. Salpatoria will serve upon defendants, or, if appearance has been entered by counsel, upon their counsel, a copy of every further pleading or other document submitted for consideration by the court. He will include with the original paper to be filed with the clerk of court a certificate stating the date and that a true and correct copy of any document was mailed to defendants or their counsel.

12. Salpatoria will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

13. Salpatoria's motion to appoint counsel (Docket 1) is denied.

14. Salpatoria's motion for rehearing (Docket 10) is denied.

DATED June 20ᵀᴴ, 2018.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

BY: _____
(SEAL)        DEPUTY

9